IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| SHAREE JEX<br>a/k/a/ SHAREE MORTON, | ) ) | Civil No. 2:07-CV-00987 BSJ |
| Petitioner, | ) ) ) | **MEMORANDUM OPINION**<br>**& ORDER** |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) ) | |

```
┌─────────────────────────────────┐
│              FILED              │
│   CLERK, U.S. DISTRICT COURT    │
│     April 24, 2008 (11:25am)    │
│        DISTRICT OF UTAH         │
└─────────────────────────────────┘
```

\* \* \* \* \* \* \* \* \*

This matter is before the court on Petitioner ShaRee Jex's *pro se* Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed

December 20, 2007 (dkt. no. 1) (the "Motion").  Jex seeks a court order reducing the sentence

she received after pleading guilty to the charge of Conspiracy to Manufacture Methamphetamine

in violation of 21 U.S.C. § 841(a)(1).  (*See United States v. ShaRee Jex aka ShaRee Morton*,

Case No. 2:05-CR-00114 JTG (D. Utah).)

I.      **BACKGROUND[1]**

On February 24, 2005, Jex was named in a two-count indictment for crimes related to the

attempted purchase of ephedrine on September 29, 2004.  Specifically, Jex was charged with

"Attempted Possession of a List I Chemical, Ephedrine" (count one) and "Conspiracy to

Manufacture Methamphetamine" (count two).  Because Jex's attempted purchase of ephedrine

---

[1]Unless otherwise indicated, the facts included in this section are taken from the record in *United States v. ShaRee Jex aka ShaRee Morton*, Case No. 2:05-CR-00114 JTG (D. Utah).

was a violation of her state sentence, she was committed to the custody of the State of Utah on

September 29, 2004.  And at the time that the Indictment and the related Warrant for Arrest were

issued, Jex was still in custody at the Utah State Prison.  Accordingly, Jex made her initial

appearance before Judge Greene in the United States District Court for the District of Utah on

March 23, 2005, pursuant to a Writ of Habeas Corpus *Ad Prosequendum*.  Jex was arraigned on

the Indictment and pleaded not guilty.  Jex elected to remain in state custody, executed a Waiver

of Rights Under Interstate Agreement on Detainers, and was remanded to the custody of the

Warden of the Utah State Prison.  Jex was in the primary custody of the State of Utah from

September 29, 2004 to April 11, 2006.

On June 29, 2006, Jex pleaded guilty to Conspiracy to Manufacture Methamphetamine

(count two of the Indictment) pursuant to a plea agreement.[2]  Following Jex's guilty plea, the

court released Jex subject to the standard conditions of pretrial release.

The Presentence Report prepared by the United States Probation Officer before Jex was

sentenced advised that Jex's offense carried a mandatory minimum ten-year term of

imprisonment and that based on Jex's total offense level and criminal history category, the

applicable guideline range was 262 to 327 months.  The Presentence Report also indicated that

the Government had agreed to motion the court for a downward departure pursuant to Section

5K1.1 of the United States Sentencing Guidelines based on Jex's substantial assistance.  The

Probation Officer recommended that Jex be sentenced to a 120-month term of imprisonment.

The Government contends that it recommended that Jex be imprisoned for 151 months.

(Government's Response to Defendant's Motion Under 28 U.S.C. 2255 To Correct Sentence

---

[2]On October 23, 2006, upon motion by the Government, the court dismissed count one of the Indictment.

(dkt. no. 4) (the "Government's Response") at 3.)

At the sentencing hearing on October 23, 2006, the court committed Jex to the custody of the United States Bureau of Prisons and sentenced Jex to ninety-two months in federal prison, followed by sixty months of supervised release.  The court entered its Judgment against Jex on November 1, 2006.  Jex did not file a notice of appeal.

On December 20, 2007, Jex commenced this proceeding by filing her § 2255 Motion.  In her Motion, Jex challenges her ninety-two-month sentence.  Jex seeks a thirty-month reduction to her sentence, claiming that such relief would reduce her sentence from "excessive" to "reasonable."  Jex asserts five grounds in support of her Motion.  As her first three grounds, Jex claims that she received ineffective assistance of counsel with respect to her sentence. Specifically, Jex argues that her attorney provided ineffective assistance during sentencing by failing to seek credit for the time Jex served in the Utah State Prison (ground one) or for the time Jex was on pretrial release (ground two).  As her third ground, Jex claims that her attorney failed to zealously represent her during sentencing.  As her fourth ground, Jex contends that her prior criminal history was inappropriately considered in determining the length of her sentence.  And as her fifth ground, Jex argues that because of alleged substandard and inadequate living conditions in the Utah State Prison, her sentence should be reduced to reflect the approximately nineteen months that she spent incarcerated there before she was sentenced in relation to the Indictment.

The Government argues that the court should deny Jex's Motion because Jex waived her right to challenge her sentence under 28 U.S.C. § 2255 in her Statement in Advance of Plea and because Jex's Motion was not filed within one year of the date on which Jex's Judgment became

final.  (Government's Response at 3-6.)  The Government also argues that Jex's Motion should

be denied on its merits.  (*Id.* at 6-9.)

 The court has carefully considered and liberally construed Jex's *pro se* Motion.  *See Hall*

*v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be

construed liberally and held to a less stringent standard than formal pleadings drafted by

lawyers.").  Even construing Jex's claims under this liberal standard, the court determines that

Jex's claims fail on their merits.  Additionally, the court concludes that Jex waived her right to

collaterally attack her sentence under § 2255 and that her Motion was not timely filed.

Accordingly, the court denies Jex's Motion.

## II. ANALYSIS

### A. The Merits of Jex's Claims

#### 1. Ineffective Assistance of Counsel

 Jex's first three grounds in support of her § 2255 Motion are based on her assertion that

she received ineffective assistance of counsel at sentencing.  To demonstrate ineffective

assistance of counsel, Jex "must establish both that h[er] attorney's representation was deficient

and that [s]he was prejudiced by that deficiency."  *James v. Gibson*, 211 F.3d 543, 555 (10th Cir.

2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  This standard applies to

sentencing proceedings.  *See United States v. Glover*, 97 F.3d 1345, 1349 (10th Cir. 1996).  With

respect to the deficiency prong, "counsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment."  *Strickland*, 466 U.S. at 690.  "Judicial scrutiny of counsel's performance must be

highly deferential."  *Id.* at 689.  To succeed on the prejudice prong, Jex must demonstrate that

4

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

As her first ground, Jex argues that she should have received credit for approximately nineteen months that she spent incarcerated in the Utah State Prison from September 28, 2004 to April 11, 2006, and that she received ineffective assistance of counsel during sentencing because her attorney did not request such credit.[3]

Jex's claim that her attorney failed to request credit for the time she served in the Utah State Prison is without merit.  In the Sentencing Memorandum filed by Jex's attorney on October 16, 2006, credit for the time Jex served in state custody was included as an 18 U.S.C. § 3553 consideration.  (Case No. 2:05-CR-00114 JTG (D. Utah), Sentencing Memorandum at 5.) Specifically, the Sentencing Memorandum provided:

> Ms. Jex submits that from September 29, 2004 to April 11, 2006, she was in the primary custody of the State of Utah due to a violation of her state sentence because of this pending federal matter.  It is not customary that the Bureau of Prisons gives credit for "time served" if a defendant is not in the primary custody of the United States Marshal Service.
> Ms. Jex was never formally violated; thus the 18 months she spent in prison is "dead time."  Ms. Jex respectfully requests that this Court consider deducting this time from her federal sentence so in the alternative she receives credit for time served of 18 months.

(*Id.*)  Jex's attorney clearly sought credit for the approximately eighteen months that Jex spent in state custody, and Jex's claim that her attorney failed to do so is simply refuted by the record.

---

[3]In her § 2255 Motion, Jex claims that she was in state custody at the Utah State Prison beginning on September 28, 2004.  (Motion at 4.)  However, the Indictment indicates that Jex committed her offense on September 29, 2004.  (Case No. 2:05-CR-00114 JTG (D. Utah), Indictment (dkt. no. 1).)  Similarly, Jex's Sentencing Memorandum indicates that she was in the primary custody of the State of Utah beginning on September 29th, not September 28th, of 2004.  (Case No. 2:05-CR-00114 JTG (D. Utah), Sentencing Memorandum (dkt. no. 103), at 5.)

In addition, the court notes that contrary to Jex's assertion in her Motion that she "was in [a] state facility under *federal custody* from Sept[ember] 28, 2004 to April 11, 2006," (Motion at 4 (emphasis added)), she was in fact in *state* custody, not federal custody, during that time.  On March 23, 2005, Jex initially appeared before the federal district court pursuant to a writ of habeas corpus *ad prosequendum.*  Jex elected to remain in state custody and executed a Waiver of Rights under the Interstate Agreement on Detainers, "freely and voluntarily waiv[ing], renounc[ing] and abjur[ing] any right or claim which she may or might otherwise have to remain in the custody of the United States Marshal for this District."  (Case No. 2:05-CR-00114 JTG (D. Utah), Waiver of Rights Under Interstate Agreement on Detainers (dkt. no. 14), at 1.)  Jex's federal sentence did not begin until October 23, 2006, when she was received into federal custody for the purpose of serving her federal sentence.  *See* 18 U.S.C. § 3585(a).  The time that Jex spent incarcerated in the Utah State Prison from September 29, 2004 to April 11, 2006 – before commencement of her federal sentence – was credited toward her state sentence. Accordingly, Jex is not entitled to federal credit for that time.  *See* 18 U.S.C. § 3585(b) (allowing credit for time spent in detention prior to the commencement of a federal sentence where that time has not been credited on another sentence); *Binford v. United States*, 436 F.3d 1252, 1256 (10th Cir. 2006).

With respect to Jex's first ground, the court determines that Jex has failed to establish either that her attorney's representation was deficient, or that she was prejudiced in any way by her attorney's representation.  Thus, Jex's first ground fails.

Jex's second ground is also without merit.  As her second ground, Jex argues that she received ineffective assistance of counsel at sentencing because her attorney "did not motion the

court to credit Petitioner with time served while under restraint of Pre-Trial Release prior to

sentencing . . . ."  (Motion at 5.)  Pursuant to 18 U.S.C. § 3585(b),

> [a] defendant shall be given credit toward the service of a term of imprisonment
> for any time he has spent in official detention prior to the date the sentence
> commences --
> (1) as a result of the offense for which the sentence was imposed;
>  . . .
> that has not been credited against another sentence.

"For the purpose of calculating credit for time served under 18 U.S.C. § 3585, 'official

detention' means imprisonment in a place of confinement, not stipulations or conditions imposed

upon a person not subject to full physical incarceration."  *United States v. Woods*, 888 F.2d 653,

655 (10th Cir. 1989).  While "a criminal defendant is entitled credit under 18 U.S.C. § 3585 for

time spent in detention prior to commencement of sentence, no such credit is allowed for time

spent on conditional release."  *Id.*

Applying these standards to the facts of this case, it is clear that Jex was not subject to

"imprisonment in a place of confinement" or "full physical incarceration" as a result of her

*conditional release* prior to sentencing.  Because Jex has failed to establish that her pretrial

release time constituted "official detention" prior to the commencement of her sentence, she is

not entitled to credit toward her sentence under 18 U.S.C. § 3585.

Jex has failed to establish that the term of her sentence would have been reduced or that

her sentence would have been different had her attorney asked that her sentence be reduced to

account for conditional pretrial release time.  The court finds that the performance of Jex's

attorney was objectively reasonable and that Jex suffered no prejudice.  Accordingly, Jex's

ineffective assistance of counsel claim as it relates to the issue of pretrial release time fails.

Like her first and second grounds, Jex's third ground for ineffective assistance of counsel

also fails.  Jex argues that she received ineffective assistance of counsel because her attorney "failed to zealously represent [her] at sentencing," "was intimidated by the prosecutor," and was "passive not persuasive" during sentencing.  (Motion at 7.)  But Jex offers no factual support for her assertions and the record does not support Jex's allegations.  As Jex herself acknowledges, her "counsel presented documentation to the judge of [her] diminished capacity due to post-traumatic stress syndrome, [of her] pre-cancer diagnosis, and [of the] family crisis [caused by the] death of [her] mother [due to brain cancer."  (Motion at 7.)  Jex's counsel also brought a number of other factors and issues relevant to sentencing to the court's attention, including but not limited to Jex's successful and continuing participation in a drug treatment program, Jex's then-drug-free status since September of 2004, Jex's then-current employment for Big D Construction, and the fact that Jex's blind father depended on Jex for his care.  (Case No. 2:05-CR-00114 JTG (D. Utah), Defendant's Position With Respect To Sentencing Factors (dkt. no. 102) and Sentencing Memorandum.)

A review of the record indicates that Jex's counsel was diligent and successful in obtaining a sentence for Jex that was well below the advisory guideline range for Jex's offense. In the absence of any specific facts showing that her attorney's performance was deficient, the court finds that Jex has not overcome the strong presumption that her attorney performed in an objectively reasonable manner.  Nor has Jex shown that she suffered prejudice as a result of her attorney's performance.  Accordingly, Jex's third ground fails.

### 2.   Criminal History

Jex argues as her fourth ground that the sentencing court inappropriately considered her criminal history as a sentencing factor and that as a result, she received a longer sentence than

her co-defendant, Robert Stan Howa.  Jex's argument is without merit.  It is not improper for a sentencing court to consider a defendant's criminal history in determining a sentence.  In fact, a defendant's criminal history and prior commission of crime is a typical sentencing factor.  *See* 18 U.S.C. § 3553(a) ("The court, in determining the particular sentence to be imposed, shall consider -- (1) the nature and circumstances of the offense and the history and characteristics of the defendant . . . ."); United States Sentencing Commission, *Guidelines Manual*, Ch. 4 Pt. A, intro. comment. (2005) ("The Comprehensive Crime Control Act sets forth four purposes of sentencing.  (*See* 18 U.S.C. § 3553(a)(2).)  A defendant's record of past criminal conduct is directly relevant to those purposes."); *id.* at § 4A1.1–4A1.3; *id.* at Ch. 5 Pt. A, comment. (n.1) ("The Offense Level (1-43) forms the vertical axis of the Sentencing Table.  The Criminal History Category (I-VI) forms the horizontal axis of the Table.  The intersection of the Offense Level and Criminal History Category displays the Guideline Range in months of imprisonment.").

In her plea agreement, Jex acknowledged that her sentence would be determined pursuant to 18 U.S.C. § 3553(a) and that the court would consider the United States Sentencing Guidelines in determining her sentence.  (Case No. 2:05-CR-00114 JTG (D. Utah), Statement by Defendant in Advance of Plea of Guilty (dkt. no. 91) ("Statement in Advance of Plea") at 2 ¶ 3 ("I know that the sentencing procedures in this case and the ultimate sentence will be determined pursuant to 18 U.S.C. § 3553(a), and that the Court must consider, but is not bound by, the United States Sentencing Guidelines, in determining my sentence.  I have discussed these facts with my attorney.").)  Because a defendant's criminal history is an important consideration in

determining a reasonable sentence, Jex's fourth ground fails.[4]

### 3.     Alleged Substandard Conditions at the Utah State Prison

In her fifth ground, like in her first ground, Jex argues that she should have received credit for the approximately nineteen months that she spent incarcerated in the Utah State Prison. Jex claims that she should receive credit for "19 or more months to compensate for sub-standard living conditions she was forced to endure while incarcerated in [a] non-federal institution." (Motion at 14.)  According to Jex, the Utah State Prison had an "inadequate standard of living for health and well-being of Petitioner which includes inadequate food, clothing, housing conditions and medical care . . . ."  (*Id.*)

Apart from her general allegations, Jex does not provide any specific description or evidence of the alleged substandard conditions at the Utah State Prison.  In addition, as discussed above with respect to Jex's first ground, Jex received credit toward her state sentence for the time that she spent incarcerated in the Utah State Prison, and thus she is not entitled to credit toward her federal sentence for that same period of time.  For at least these reasons, the court determines that Jex's fifth ground in support of her Motion is without merit.

### B.     Waiver

In addition to failing on the merits, Jex's Motion is denied because Jex, as part of her plea agreement, waived her right to collaterally attack her sentence under § 2255.

While "the right to bring a collateral attack under § 2255 is a statutory right," a waiver of

---

[4]The court also notes that before and during her sentencing, and after reviewing the Presentence Report prepared by the United States Probation Officer with her attorney, Jex neither objected to nor made any clarifications with respect to the Criminal History portion of the Presentence Report.  (Case No. 2:05-CR-00114 JTG (D. Utah), Defendant's Position With Respect to Sentencing Factors and Sentencing Memorandum.)  Nor does Jex make any argument in her § 2255 Motion that her criminal history category under the Sentencing Guidelines was improperly calculated.

such right "is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1182-83 (10th Cir. 2001).  Although certain exceptions to this rule apply, "including where the agreement was involuntary or unknowing, where the court relied on an impermissible factor such as race, . . . where the agreement is otherwise unlawful," where a sentence exceeds the statutory maximum, or where a petitioner claims that the plea agreement or waiver was entered into with ineffective assistance of counsel, *id.* at 1182, none of these exceptions apply to invalidate Jex's written waiver of her right to challenge her sentence or the manner in which it was determined.

In her Statement in Advance of Plea, Jex agreed that: "I also knowingly, voluntarily and expressly waive my right to challenge my sentence, and the manner in which the sentence is determined, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under Title 28, United States Code, Section 2255."  (Case No. 2:05-CR-00114 JTG (D. Utah), Statement in Advance of Plea at 4 ¶ 10.)  Jex signed the Statement in Advance of Plea, acknowledging that she had been advised of and understood its contents, acknowledging that she had the right to ask the court any questions regarding her rights or the contents of the plea agreement, and specifying that she was satisfied with her attorney.  (*Id.*)  Jex does not claim that she involuntarily or unknowingly entered into her plea agreement or the waiver of her right to file a § 2255 motion.  Moreover, none of the five grounds asserted in Jex's Motion relate in any way to the proceedings leading up to the entry of her guilty plea, to the validity of her plea agreement, or to the validity of her waiver.  Instead, each of Jex's claims is nothing more than "'an attack on h[er] sentence and the manner in which it was determined.'"  *Cockerham*, 237

F.3d at 1184 (quoting *Mason v. United States*, 211 F.3d 1065, 1068 (7th Cir. 2000)).  Even Jex's

first three grounds, which are labeled as ineffective assistance of counsel claims, are waivable

and have been waived.  While "a plea agreement waiver of postconviction rights does not waive

the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging

the validity of the plea or the waiver," it is "consistent with Supreme Court precedent to enforce

a waiver of § 2255 rights expressly contained in a plea agreement when the collateral attack does

not challenge counsel's representation in negotiating or entering the plea or waiver."  *Id.* at 1187.

In this case, Jex's ineffective assistance of counsel claims do not challenge her attorney's

representation in relation to negotiating or entering Jex's plea agreement or waiver.  Instead,

Jex's ineffective assistance claims solely relate to the performance of Jex's attorney with respect

to sentencing.  Jex's waiver is therefore enforceable with respect to Jex's ineffective assistance

claims.

      Because each of the five grounds in Jex's Motion is a specific challenge to Jex's

sentence, and because Jex knowingly, voluntarily and expressly waived her right to challenge

her sentence as part of her plea agreement, the court denies Jex's Motion.

### C.    Untimeliness

      Finally, Jex's Motion should be denied because it was filed over a year after her

Judgment became final.  Under 28 U.S.C. § 2255(f),

> A 1-year period of limitation shall apply to a motion under this section.  The
> limitation period shall run from the latest of --
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental
> action in violation of the Constitution or laws of the United States is removed, if the
> movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

In her Motion, Jex does not refer to any impediment to filing her Motion besides the fact that she was unaware of the one-year limitation. Moreover, the grounds in support of Jex's Motion, which relate to her sentence and the manner in which it was determined, all involve facts that Jex could or should have been aware of as of the date of her sentencing on October 23, 2006. There is no indication that subsections (2), (3), or (4) of 28 U.S.C. § 2255(f) apply to this case. Thus, to be timely, Jex's Motion must have been filed within one year from the date on which her Judgment became final. 28 U.S.C. § 2255(f)(1).

Judgment was entered against Jex in the underlying action on November 1, 2006. (Case No. 2:05-CR-00114 JTG (D. Utah), Judgment (dkt. no. 106).) Thereafter, Jex had ten days to file a notice of appeal. Fed. R. App. P. 4(b)(1)(A)(i). Jex did not file a notice of appeal, and the Judgment became final on November 16, 2006. *See* Fed. R. App. P. 4(b)(1)(A)(i); *id.* at 26(a)(2). Jex filed her Motion in this case on December 20, 2007, more than one year later.

While Jex acknowledges that she filed her Motion after the one-year limitations period set forth in 28 U.S.C. § 2255(f)(1) had expired, she claims that she "did not know about the one-year statute of limitations until a few days after the year expired" and that she "did not have the legal skills to know" of the one-year time limit. (Motion at 12.) But the fact that Jex did not know about the limitations period until after it had expired does not justify an equitable tolling of the one-year limitations period. *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the

law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999))).  And while Jex indicates that she "requested a 90-day extension of time in order to prepare the § 2255 appeal," she provides no specific information regarding how or to whom she made such a request, and the court is unaware of any such request having been made.  Because Jex's Motion was not filed until December 20, 2007, more than one year after her Judgment became final, the court determines that Jex's Motion is untimely.

**III.    CONCLUSION**

For the reasons set forth above, Jex's § 2255 Motion is DENIED and this case is dismissed with prejudice.

**SO ORDERED.**

DATED this _____ day of April, 2008.

BY THE COURT:

_____
Bruce S. Jenkins
United States Senior District Judge

14

law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'"

(quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999))).  And while Jex indicates that

she "requested a 90-day extension of time in order to prepare the § 2255 appeal," she provides

no specific information regarding how or to whom she made such a request, and the court is

unaware of any such request having been made.  Because Jex's Motion was not filed until

December 20, 2007, more than one year after her Judgment became final, the court determines

that Jex's Motion is untimely.

III.    **CONCLUSION**

      For the reasons set forth above, Jex's § 2255 Motion is DENIED and this case is

dismissed with prejudice.

      **SO ORDERED.**

      DATED this __24__ day of April, 2008.

                                  BY THE COURT:

                                    Bruce S. Jenkins
                                  United States Senior District Judge